**BC LAW GROUP, P.C.**
Brett E. Cooper (*pro hac vice* forthcoming)
bcooper@bc-lawgroup.com
Seth Hasenour (*pro hac vice* forthcoming)
shasenour@bc-lawgroup.com
Jonathan R. Yim (*pro hac vice* forthcoming)
jyim@bc-lawgroup.com
Drew B. Hollander (*pro hac vice* forthcoming)
dhollander@bc-lawgroup.com
Ashley M. Ratycz (*pro hac vice* forthcoming)
aratycz@bclgpc.com
200 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 951-0100
Fax: (212) 951-0330

**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
Jennifer Estremera (CA Bar No. 251076)
jestremera@reichmanjorgensen.com
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel:  (650) 623-1401

*Attorneys for Respondent*
*Universal Connectivity Technologies Inc.*

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORP., <br><br> Movant, <br><br> v. <br><br> UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br> Respondent. | Case No. 4:25-mc-80082 <br><br> [Underlying Case No. 2:23-cv-00449 (E.D. Tex.) *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*] <br><br> **DEFENDANT'S OPPOSITION TO NON-PARTY REALTEK SEMICONDUCTOR CORP.'S MOTION TO QUASH SUBPOENA AND CROSS-MOTION TO COMPEL** <br><br> Judge: Donna M. Ryu <br> Date: TBD <br> Time: TBD <br> Courtroom: TBD |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

III.   LEGAL STANDARD ......................................................................................... 5

IV.    ARGUMENT ...................................................................................................... 6

    A.     Realtek Waived its Right to Object to UCT's Subpoena ............................. 6

    B.     UCT's Alternative Service of the Subpoena on Realtek Was Effective ........ 7

        1.     UCT's Service of the Subpoena by Registered Mail Was Justified
             and Comported with Due Process ..................................................... 9

        2.     UCT's Service of the Subpoena by Email on Realtek's Counsel
             Was Justified and Comported with Due Process ............................. 10

        3.     Realtek's Arguments are Misguided ................................................ 10

    C.     The Court Should Compel Realtek to Comply with the Subpoena in the
        Northern District of California ................................................................. 12

    D.     UCT's Discovery Requests Are Narrowly Tailored To The Needs Of The
        Underlying Case ...................................................................................... 14

V.     CONCLUSION ................................................................................................. 16

1

# TABLE OF AUTHORITIES

2

## <u>Cases</u>

3

*Al-Saadi v. Annchery Fajas USA, Inc.*,
No. 20-23937-CIV, 2022 WL 898562 (S.D. Fla. Mar. 25, 2022)................................. 14

4

5

*Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*,
No. 3:16-mc-80062-JSC, 2016 WL 3162218 (N.D. Cal. June 7, 2016) ...................... 8

6

7

*Bofi Fed. Bank v. Erhart*,
No. 15-cv-2353 BAS (NLS), 2016 WL 1644726 (S.D. Cal. Apr. 26, 2016) ................ 8

8

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
408 F.3d 1142 (9th Cir. 2005) ................................................................. 8

9

10

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*,
2019 WL 246562 (S.D. Cal. Jan. 17, 2019) .............................................. 13

11

12

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) ............................................................ 8

13

*In re OnePlus Tech. (Shenzhen) Co., Ltd.*,
2021 WL 4130643 (Fed. Cir. Sept. 10, 2021) .......................................... 11

14

15

*In re Subpoena to Huawei Techs. Co.*,
720 F. Supp. 2d 969 (N.D. Ill. June 2, 2010) .......................................... 14

16

17

*In re Subpoena to Third Party Sentieon, Inc.*,
No. 22-mc-80281-VKD, 2022 WL 17477092 (N.D. Cal. Dec. 6, 2022)................. 8

18

*McKeon v. Cent. Valley Cmty. Sports Found.*,
No. 1:18-cv-00358-BAM, 2019 WL 1208986 (E.D. Cal. Mar. 14, 2019)................ 8

19

20

*Noble Sec., Inc. v. Ingamar Co.*,
2021 WL 2012508 (E.D.N.Y. May 20, 2021)............................................ 13

21

22

*Nuance Comm'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) ............................................................ 11

23

*Ott v. City of Milwaukee*,
682 F.3d 552 (7th Cir. 2012) ............................................................... 14

24

25

*Paisley Park Enters., Inc. v. Boxill*,
No. 17-1212, 2019 WL 1036059 (D. Minn. Mar. 5, 2019)........................... 14

26

27

*ParkerVision, Inc. v. Realtek Semiconductor Corp.*,
No. 6:23-cv-00374-ADA (W.D. Tex.) ................................................. 6, 13

28

*Richmark Corp. v. Timber Falling Consultants*,

United States District Court
Northern District of California

United States District Court
Northern District of California

959 F.2d 1468 (9th Cir. 1992) ....................................................................................... 9

*Sanchez YMartin, S.A. de C.V. v. Dos Amigos, Inc.*,
No. 17CV1943, 2018 WL 2387580 (S.D. Cal. May 24, 2018) ................................. 14

*Shillitani v. U.S.*,
384 U.S. 364 (1966) ..................................................................................................... 9

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
No. 2:20-cv-00003-JRG, 2020 WL 6578411 (E.D. Tex. June 15, 2020) ................. 11

*STC.UNM v. Apple Inc.*,
No. 6:19-cv-428-ADA, Dkt. No. 27 (W.D. Tex. Nov. 3, 2019) ................................. 14

*Thales Visionix, Inc. v. United States*,
149 Fed. Cl. 38 (Fed. Cl. Apr. 6, 2020) .................................................................... 16

*Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*,
813 F.2d 1206 (Fed. Cir. 1987) .................................................................................. 8

*Universal Connectivity Techs. Inc. v. Lenovo Group Limited*,
No. 2:23-cv-00449-JRG (E.D. Tex.) ................................. 4, 5, 6, 11, 12, 13, 15, 17

*Vista Peak Adventures, LLC v. GiantPlus Tech. Co.*,
No. 2:19-cv-185-JRG, 2019 WL 4039917 (E.D. Tex. Aug. 27, 2019) ..................... 12

*Wakefield v. City of Pembroke Pines*,
No. 05-61536, 2006 WL8453004 (S.D. Fla. June 8, 2006) ...................................... 14

*Walker v. Lakewood Condo. Owners Ass'n*,
186 F.R.D. 584 (C.D. Cal. 1999) ............................................................................... 8

**Other Authorities**

Sonia K. Katyal, The Paradox of Source Code Secrecy, 104 Cornell L. Rev. 1183 (2019) ........... 16

**Rules**

Civ. L.R. 7 ................................................................................................................................ 4

Fed. R. Civ. P. 26 .................................................................................................................... 8

Fed. R. Civ. P. 34 .................................................................................................................... 8

Fed. R. Civ. P. 37 .................................................................................................................... 4

Fed. R. Civ. P. 4 .............................................................................................. 5, 10, 11, 12, 13, 14

Fed. R. Civ. P. 45 ...................................................................................... 4, 8, 9, 13, 14, 15

## I.    INTRODUCTION

Third-party Realtek Semiconductor Corp. ("Realtek") Motion to Quash Universal Connectivity Technologies Inc.'s ("UCT") Subpoena should be denied.  Instead, pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, and Civil Local Rule 7, UCT respectfully requests this Court to enforce a subpoena for the production of documents and source code served on Realtek in a patent infringement case currently pending against Lenovo Group Limited ("LGL") in the Eastern District of Texas. *Universal Connectivity Techs. Inc. v. Lenovo Group Limited*, No. 2:23-cv-00449-JRG (E.D. Tex.) (the "LGL Case").  This Court has jurisdiction over UCT's Cross-Motion to Compel because the subpoena lists the place of compliance within this judicial district.  Rule 45(g).

UCT seeks Court intervention to obtain much-needed technical discovery from third-party Realtek that directly pertains to UCT's infringement allegations in the underlying LGL Case.  In response to UCT's interrogatories in the LGL Case, LGL identified Realtek as a relevant third-party supplier of certain component parts that are included in the Accused Products.  UCT's subpoena to Realtek contains two narrowly-tailored requests for documents and source code regarding the Realtek components that LGL identified. Even though the Realtek components are clearly relevant and the requested material is easy for Realtek to collect and produce, Realtek has refused to produce any technical documents or source code arguing, essentially, that a subpoena can never be enforced on a foreign corporation.  But that cannot be true, and Realtek should not be permitted to evade the judicial system.  Accordingly, court intervention is necessary.

Realtek downplays a fact that is dispositive of its Motion: Realtek failed to timely object to or otherwise respond to UCT's subpoena.  A response to UCT's subpoena was originally due on March 3, 2025.  Realtek requested, and UCT agreed to, a two-week extension of time.  However, Realtek did not respond to UCT's subpoena by the March 17, 2025 extended deadline.  On March 25, 2025, UCT contacted Realtek requesting its availability for a meet and confer regarding UCT's intent to file a motion to compel Realtek to comply with UCT's subpoena.  In response, Realtek provided its belated objections and responses to the Subpoena and told UCT it intended to file a motion to quash. But Realtek's actions came too late and none of Realtek's identified excuses justify Realtek's delay.

United States District Court
Northern District of California

1    Accordingly, by failing to object or otherwise respond to UCT's subpoena by March 17, 2025,

2    Realtek has waived its right to object and should not be permitted to now move to quash the

3    subpoena.

4        Setting aside Realtek's waiver, Realtek's Motion to Quash should be denied on the merits.

5    First, UCT's alternative service of its Subpoena on Realtek by registered mail and via email to

6    Realtek's active U.S. litigation counsel was effective, as recognized by the Texas Court in the LGL

7    Case.  In particular, UCT filed a Motion for Leave to Effectuate Alternative Service on Realtek after

8    having attempted service of the Subpoena on Realtek in three different ways.  The Texas Court

9    granted UCT"s Motion allowing UCT to serve the Subpoena on Realtek via registered mail and

10   email to Realtek's U.S. litigation counsel pursuant to Rule 4.  Realtek provides no meaningful

11   analysis of the Texas Court's reliance on Rule 4 to explain its position that Rule 4 does not apply

12   here.

13       Realtek should be required to comply with the Subpoena and produce documents and source

14   code at the listed place of compliance in California because it is within 100 miles of where Realtek

15   has numerous U.S. employees and regularly transacts business in person.  Realtek has at least two

16   U.S. subsidiaries located within 100 miles of the listed place of compliance.  In addition, Realtek—

17   a Taiwanese company—employs numerous persons in the United States who reside within 100

18   miles of the listed place of compliance.  Accordingly, UCT properly identified the place of

19   compliance on the Subpoena.

20       Realtek's concerns about the sensitive nature of its technical information including source

21   code are undermined by the already robust protective order in place in the LGL Case that specifically

22   addresses the use and protection of source code material.  To the extent Realtek believes additional

23   protections are necessary, Realtek can request a supplemental protective order as several other third

24   parties have already done.  Notably, numerous other LGL third-party suppliers have already

25   produced their technical documents and source code in the LGL Case, evidencing that the existing

26   protective order is more than sufficient.

27       Furthermore, UCT's discovery requests are narrowly tailored to the information that UCT

28   needs to prove its infringement case.  For example, UCT has specifically identified the Realtek

1    component part numbers that are used in the LGL Products accused of infringement.  UCT has also

2    offered to agree to a representative set of source code for each category of components to help

3    alleviate any alleged burden on Realtek.  UCT needs this discovery in the LGL Case to prove

4    infringement where the accused functionality is determined by the Realtek component therein.

5    Accordingly, UCT respectfully requests that the Court deny Realtek's Motion to Quash and instead,

6    grant UCT's Motion to Compel Realtek to comply with the subpoena.

7    **II.    BACKGROUND**

8        UCT filed suit against Lenovo Group Limited ("LGL") in the Eastern District of Texas on

9    September 28, 2023, alleging that LGL's Products that support certain USB, PCIe, and DisplayPort

10   standards infringe eight of UCT's U.S. Patents.  *See* LGL Case, Dkt. No. 1.  On October 11, 2024,

11   in response to certain discovery requests, LGL identified Realtek as one of its third-party component

12   suppliers and provided the specific model numbers of the relevant Realtek components used in

13   LGL's Products that are accused of infringement.  Cooper Decl. ¶ 11.

14       On October 23, 2024, UCT attempted to serve Realtek with a subpoena at its corporate

15   headquarters in Taiwan located at No. 2, Innovation Road II, Hsinchu Science Park, Hsinchu 300,

16   Taiwan, R.O.C. by serving a Ms. Myung Li, the person that is designated to accept service on behalf

17   of Realtek, but Ms. Li refused to accept service.  Cooper Decl. ¶ 12.  On November 18, 2024, UCT

18   emailed the subpoena to Realtek's U.S. counsel, Lisa Nguyen at Paul Hastings, in the ongoing action

19   *ParkerVision, Inc. v. Realtek Semiconductor Corp.*, No. 6:23-cv-00374-ADA (W.D. Tex.), but did

20   not receive a response.  Cooper Decl. ¶ 13.

21       On December 6, 2024, the Court in the Eastern District of Texas granted UCT's Unopposed

22   Motion for the Issuance of Letter Rogatory to Request the Production of Documents by Realtek

23   Semiconductor Corp. (Taiwan).  *See* LGL Case, Dkt. No. 66.  Accordingly, UCT initialized the

24   Letters Rogatory process, but to no avail.[1]  Having not heard from Realtek, UCT, on January 22,

25   2025, filed a Motion for Alternative Service with the Court in the Eastern District of Texas

26   requesting leave to serve Realtek with its subpoena by registered mail and by serving Realtek's U.S.

27   litigation counsel by email.  *See* LGL Case, Dkt. No. 82.  The Court granted UCT's Motion for

28   _____

[1] Notably, UCT has still heard nothing in response to the Letters Rogatory process.

United States District Court
Northern District of California

1   Alternative Service on February 15, 2025, and UCT promptly served the subpoena on Realtek once

2   again. *Id.*, Dkt. No. 97.

3       On February 25, 2025, Mark Speegle notified UCT that his firm has been engaged to represent

4   Realtek and requested a call with UCT to discuss the details. Ex. 1 (Email Speegle to UCT). The

5   parties had a call on February 26, 2025, during which Realtek requested a two-week extension of

6   time to respond to the subpoena extending the due date for objections and responses from March 3,

7   2025 to March 17, 2025. In a follow-up email that same day, UCT agreed to the two-week extension

8   and provided specific information regarding the Realtek components for which UCT seeks

9   discovery. Ex. 2 (Email Hasenour to Speegle). In particular, UCT provided a list of Realtek

10  component part numbers for the power delivery (PD) controllers, DisplayPort controllers, and

11  USB/PD controllers. *Id.*

12      Realtek did not object to or otherwise provide any responses to UCT's subpoena by the March

13  17, 2025 extended deadline. Cooper Decl. ¶ 14. On March 25, 2025, UCT contacted Realtek to

14  request a time for a meet and confer to discuss UCT's intended motion to compel Realtek to comply

15  with the Subpoena. Ex. 3 (Ratycz March 25, 2025 Email). In response, on March 25, 2025, Realtek

16  provided its belated objections and responses to the Subpoena and stated that it would like to discuss

17  its forthcoming motion to quash during the meet and confer. Ex. 4 (Speegle March 25, 2025 Email).

18  The partes held a meet and confer on March 26, 2025. Cooper Decl. ¶ 15. During the meet and

19  confer UCT encouraged Realtek to agree to filing a Joint Discovery Letter with the Court where

20  each party could outline their respective positions regarding UCT's Subpoena. *Id.* Per Realtek's

21  request during the meet and confer, UCT subsequently provided exemplary references to standing

22  orders from various magistrate judges in the district indicating that the filing of a Joint Discovery

23  Letter was the preferred method for parties to bring a discovery dispute before the Court. Ex. 5

24  (Ratycz March 26, 2025 Email). On March 28, 2025, Realtek notified UCT that it would not agree

25  to filing a Joint Discovery Letter and subsequently filed its Motion to Quash that same day. Ex. 6

26  (Speegle Email March 28, 2025).

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.    LEGAL STANDARD

"Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties. The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *In re Subpoena to Third Party Sentieon, Inc.*, No. 22-mc-80281-VKD, 2022 WL 17477092, at *1 (N.D. Cal. Dec. 6, 2022); *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 advisory comm's note (1970); Fed. R. Civ. P. 34 (a)). Rule 26 permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"Proper subpoenas issued by attorneys on behalf of the court are treated as orders of the Court." *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-cv-00358-BAM, 2019 WL 1208986, at *2 (E.D. Cal. Mar. 14, 2019) (collecting cases). "A District Court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt . . . the court should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (quoting *Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1206, 1210 (Fed. Cir. 1987).

"Once the propounding party establishes that the information sought is relevant, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bofi Fed. Bank v. Erhart*, No. 15-cv-2353 BAS (NLS), 2016 WL 1644726, at *2 (S.D. Cal. Apr. 26, 2016); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."). Rule 45(g) permits a court "for the district where compliance is required" to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R.

1    Civ. P. 45(g). Contempt sanctions are among a court's inherent powers. *See Shillitani v. U.S.*, 384

2    U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce

3    compliance with their lawful orders through civil contempt.").

4    **IV.    ARGUMENT**

5        **A.        Realtek Waived its Right to Object to UCT's Subpoena**

6        Realtek has waived its right to object to UCT's subpoena because Realtek failed to timely

7    object to or otherwise respond to UCT's Subpoena.   Realtek's responses and objections were

8    originally due on March 3, 2025.  Realtek requested, and UCT agreed to, a two-week extension of

9    time for Realtek to respond.  Realtek did not respond to UCT's Subpoena by the March 17, 2025

10   extended deadline.  Indeed, on March 25, 2025, UCT contacted Realtek requesting its availability

11   for a meet and confer regarding UCT's intent to file a motion to compel Realtek to comply with

12   UCT's Subpoena.   In response, Realtek provided its belated objections and responses to the

13   Subpoena and told UCT it intended to file a motion to quash.  But by failing to object or otherwise

14   respond to UCT's Subpoena by the March 17, 2025 extended deadline, Realtek has waived its right

15   to object and should not be permitted to now move to quash the subpoena. *See, e.g., Richmark*

16   *Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established

17   that a failure to object to discovery requests within the time required constitutes a waiver of any

18   objection."); Fed. R. Civ. P. 45(d)(2)(B) (stating that written objections to a Rule 45 subpoena must

19   be served "before the earlier of the time specified for compliance or 14 days after the subpoena is

20   served.").

21       Realtek argues that its delay was "inadvertent" and states that such delay should not create

22   a waiver.  Motion at 10.  But Realtek has no excuse for the delay.  Indeed, Realtek seemingly

23   believes that it is critical that Realtek not be forced to provide the requested discovery, yet if it was

24   so critical, Realtek surely would not have let the deadline for responses and objections slip past,

25   especially after already requesting and receiving an extension for its deadline.

26       Realtek argues that its late response should not create a waiver because (1) the subpoena is

27   purportedly overbroad; (2) Realtek is a non-party acting in good faith; and (3) counsel for the parties

28   were in contact concerning this information prior to Realtek challenging the basis for the subpoena.

United States District Court
Northern District of California

Motion at 10-11. Realtek is wrong.

First, the subpoena is not overbroad. As explained *infra*, the Subpoena is narrowly tailored to request technical documents and source code specifically related to the Realtek component parts identified by LGL.

Second, Realtek claims to be acting in good faith, yet Realtek did not provide its objections until *UCT* reached out and notified Realtek of its failure to meet the deadline. And, after having a meet and confer to discuss that the most appropriate way to bring the parties' dispute before this Court was via Joint Discovery Letter, Realtek turned around and filed its own Motion to Quash two days later. Accordingly, it is not clear how Realtek is acting in good faith nor does Realtek provide any support for that assertion in its Motion.

Third, though the parties were in contact, UCT had not heard back from Realtek in weeks after providing Realtek with the component part information and agreeing to extend Realtek's deadline for submitting its objections and responses. In fact, UCT made clear in its February 26th email agreeing to the extension that UCT's fact deadline was rapidly approaching and as such, UCT would agree to extend the deadline so long as Realtek provides meaningful document production at that time. Ex. 2 (Hasenour 02-26-25 Email to Speegle). However, Realtek failed to respond on time and, in its response, continues to refuse to provide the requested discovery. Accordingly, Realtek has no basis for its assertion that waiver should not apply in this case.

### B. UCT's Alternative Service of the Subpoena on Realtek Was Effective

UCT's alternative service of the subpoena on Realtek by registered mail and via email to Realtek's U.S. litigation counsel was effective. The Federal Rules of Civil Procedure state that a foreign corporation served outside of the United States must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides that an individual in a foreign country may be served as follows:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated

United States District Court
Northern District of California

to give notice:

>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

>> (C) unless prohibited by the foreign country's law, by:

>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"Rule 4(f)(3) – authorizing court-ordered service 'by other means not prohibited by international agreement' – is 'not a 'last resort' or a type of 'extraordinary relief' for a plaintiff seeking to serve process on a foreign defendant.'" LGL Case, Dkt. No. 97 at 3 (quoting *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021). "To the contrary, Rule 4(f)(3) 'stands independently, on equal footing" with other methods of service under Rule 4(f). LGL Case, Dkt. No. 97 at 3 (quoting *Nuance Comm'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010)). "[C]ourts typically order service under Rule 4(f)(3) after considering the delay and expense of conventional means of service in conjunction with other special circumstances that justify court intervention." LGL Case, Dkt. No. 97 at 3; *see also SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-cv-00003-JRG, 2020 WL 6578411, at *1 (E.D. Tex. June 15, 2020) (noting that the plaintiffs had attempted service through the Hague Convention before seeking leave for alternative service). "District courts are granted broad discretion in making such a determination." LGL Case, Dkt. No. 97 at 3 (citing *OnePlus*, 2021 WL 4130643, at *3-4).

As the Texas Court recognized, UCT had already made "three separate and independently reasonable attempts at conventional service" of the Subpoena on Realtek. LGL Case, Dkt. No. 97 at 3. First, UCT attempted to serve Realtek with a subpoena in Taiwan at Realtek's listed address

and on Realtek's listed agent for acceptance of service but that attempt was rejected by Realtek. *Id.* Second, UCT attempted to serve Realtek's U.S. litigation counsel in another pending case but never received a response. *Id.* at 3-4. And third, UCT sought and obtained a letter rogatory from the Court but again, has received no response. *Id.* at 4. Appropriately, UCT then sought assistance from the Texas Court for alternative service of the subpoena to prevent further delay in light of the fact discovery deadline rapidly approaching on May 30, 2025. *Id.*

### 1. UCT's Service of the Subpoena by Registered Mail Was Justified and Comported with Due Process

UCT's service of the subpoena on Realtek by registered mail through the Court was justified under the circumstances and comported with the requirements of due process.[2] In particular, UCT moved for "leave to serve Realtek with its subpoena by sending the subpoena by a form of mail that the clerk addresses that requires a signed receipt to Realtek's headquarters at No. 2, Innovation Road II, Hsinchu Science Park, Hsinchu 300, Taiwan, R.O.C." *Id.* This method of service is permitted under Rule 4(f)(2)(C)(ii) which specifies that "unless prohibited by the foreign country's law," an individual may be served "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(2)(C)(ii). "Realtek is a corporation organized under the laws of Taiwan. Taiwanese law does not prohibit service by mail." LGL Case, Dkt. No. 97 at 4 (citing *Vista Peak Adventures, LLC v. GiantPlus Tech. Co.*, No. 2:19-cv-185-JRG, 2019 WL 4304917, *2-3 (E.D. Tex. Aug. 27, 2019).

The Texas Court explained that "[s]ince an international agreement does not prohibit service through mail, the Court, within its discretion, can authorize this method of alternative service if it satisfies the constitutional requirements of due process." LGL Case, Dkt. No. 97 at 4. The Texas Court found that "service by mail through the clerk of Court is reasonably calculated to give Realtek notice of the subpoena and give Realtek adequate time to present its objections." *Id.* Accordingly, UCT's service of the subpoena by registered mail through the Court was justified under the circumstances and comported with the requirements of due process.

---

[2] On February 26, 2025, UCT received notice that the subpoena served on Realtek via registered mail was rejected by Realtek and returned.

### 2.    UCT's Service of the Subpoena by Email on Realtek's Counsel Was Justified and Comported with Due Process

UCT's service of the Subpoena on Realtek by email on Realtek's counsel was justified under the circumstances and comported with the requirements of due process.  In particular, UCT moved for leave to serve "Realtek by emailing its U.S. litigation counsel, Lisa Nguyen at Paul Hastings, in the ongoing action *ParkerVision, Inc. v. Realtek Semiconductor Corp.*, No. 6-23-cv-00374-ADA (W.D. Tex.)."  *Id.*  This method of service is permitted under Rule 4(f)(3) which provides that an individual in a foreign country may be served "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  "The Court does not find that Taiwanese law prohibits email service."  LGL Case, Dkt. No. 97 at 5 (citing *Noble Sec., Inc. v. Ingamar Co*., 2021 WL 2012508, at *5 (E.D.N.Y. May 20, 2021); *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co*., 2019 WL 246562, at *3 (S.D. Cal. Jan. 17, 2019) (collecting cases permitting e-mail service on a Taiwanese corporation)).

The Texas Court explained that "[s]ince an international agreement does not prohibit service through mail, the Court, within its discretion, can authorize this method of alternative service if it satisfies the constitutional requirements of due process."  LGL Case, Dkt. No. 97 at 5.  The Texas Court found that "service on Realtek's U.S. litigation counsel is reasonably calculated to give Realtek notice of the subpoena and give Realtek adequate time to present its objections."  *Id.*  Accordingly, UCT's service of the subpoena by email on Realtek's counsel was justified under the circumstances and comported with the requirements of due process.  Moreover, the service by email provided sufficient notice to Realtek as confirmed by the fact that Realtek's outside counsel (Baker Botts) promptly contacted UCT and requested an extension to respond to the subpoena.

### 3.    Realtek's Arguments are Misguided

Realtek asserts that "it has not been effectively served" stating that "Rule 45 does not provide for alternative service."  Motion at 6.  But as UCT explained in its Motion for Leave to Effectuate Alternative Service (LGL Case, Dkt. No. 82), "[w]hile [Rule 45] does not describe how to serve corporate or foreign 'persons,' Rule 4 – which governs service of summons – does [and] courts use Rule 4 to 'fill the gaps' in Rule 45."  LGL Case, Dkt. No. 82 (citing *Al-Saadi v. Annchery Fajas*

-10-

United States District Court
Northern District of California

*USA, Inc.*, No. 20-23937-CIV, 2022 WL 898562, at *1 (S.D. Fla. Mar. 25, 2022); Ex. B, *STC.UNM v. Apple Inc.*, No. 6:19-cv-428-ADA, Dkt. No. 27 (W.D. Tex. Nov. 3, 2019); *In re Subpoena to Huawei Techs. Co.*, 720 F. Supp. 2d 969, 972 (N.D. Ill. June 2, 2010); *Wakefield v. City of Pembroke Pines*, No. 05-61536, 2006 WL8453004, at *1 (S.D. Fla. June 8, 2006) ("Because Rule 45 does not specify what constitutes personal service on a corporation, courts looks to [Rule 4] for guidance."); *Sanchez YMartin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943, 2018 WL 2387580, at *3 (S.D. Cal. May 24, 2018) ("Rule 45 does not specify what constitutes personal service on a corporation in the United States or in a foreign country. To fill this gap, courts have relied upon the service of process requirements on corporations set forth in Rule 4 of the Federal Rules of Civil Procedure."); *Paisley Park Enters., Inc. v. Boxill*, No. 17-1212, 2019 WL 1036059, at *3 (D. Minn. Mar. 5, 2019) (same); *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (holding that Rule 45 authorizes service of a subpoena by certified mail based on comparison to Rule 4); *In re Subpoenato VaughnPerling*, No. 19-mc-00083, 2019 WL 8012372, at *4 (C.D. Cal. Dec. 2, 2019) ("[T]he court sees no policy distinction between Rules 4, 5 and 45, such that service other than personal service should be sufficient under the first two but not the third.") (quotation omitted).  Realtek does not address UCT's—or the Texas Court's—analysis of Rule 4, other than merely concluding that only Rule 45 is applicable to this Subpoena.  Motion at 6-7.  But Realtek's blanket assertion does not discount the Texas Court's determination that UCT's service of the Subpoena on Realtek by alternative means was effective.[3]

Lastly, Realtek complains that UCT did not wait long enough for the letters rogatory process to take effect stating that UCT's request was merely pretextual.  Motion at 7.  LGL first provided UCT with Realtek component information on October 11, 2024.  Cooper Decl. ¶ 11.  Shortly thereafter, UCT first attempted to serve Realtek with a subpoena on October 23, 2024.  Cooper Decl. ¶ 12.  UCT has been diligently pursuing Realtek for this discovery ever since then.  UCT resorted to alternative service on Realtek only after *three* failed attempts to get Realtek to respond to its subpoena.  As the Texas Court recognized, UCT's fact discovery deadline is rapidly approaching

---

[3] Realtek argues that an "extensive body of contrary caselaw" exists to rebut UCT's reliance on Rule 4, but cites only to one treatise in support.  Motion at 8.

on May 30, 2025.  Accordingly, UCT could not sit around and wait for the letters rogatory process to play out over "four to seven months" as Realtek suggests it should have.  Nor has Realtek agreed to provide any discovery as part of the letters rogatory process.

### C. The Court Should Compel Realtek to Comply with the Subpoena in the Northern District of California

It is unreasonable for Realtek to be able to transact business and have employees located in the United States but at the same time, avoid participating in the United States judicial process. UCT properly identified the place of compliance for the subpoena as 100 Marine Parkway, Suite 300, Redwood Shores, CA 94065 because it is within 100 miles of where Realtek regularly transacts business in person through its U.S. subsidiaries and where numerous of its U.S. based employees reside.  "A subpoena may command… production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]"  Fed. R. Civ. P. 45(c)(2)(A).  In particular, Realtek represents to the public that it "has sales or R&D teams in… the United States."  LGL Case, Dkt. No. 82-4 at 4.  In addition, Realtek represents to the public that is has subsidiaries located in the United States including Cortina Access Inc. and Ubilinx Technology Inc., which Realtek classifies as "R&D and technical support" businesses.  *Id.* at 108-109.  Cortina Access Inc. is headquartered at 2130 Gold Street, Suite 250, San Jose, CA 95002 and Ubilinx Technology Inc. is headquartered at 2841 Junction Ave, San Jose, CA 95134.  Ex. 7 (Cortina Access Webpage); Ex. 8 (Ubilinx Technology Webpage).  Both Cortina Access Inc. and Ubilinx Technology Inc. are within 100 miles of the listed place of compliance on the Subpoena.

Furthermore, Realtek—a Taiwanese company—employs numerous persons within the United States, including persons located in California within 100 miles of the listed place of compliance of the Subpoena.  *See* LGL Case, Dkt. No. 82-05 at 4 (Colin LIU listing "Realtek Semiconductor Corp." as his employer and listing "Fremont, California" as his location); *id.* at 8 (Devon Worrell listing "Realtek Semiconductor Corp." as his employer and "Folsom, California" as his location); *id.* at 14 (Fengcheng Liu listing "Real Communications Inc/Realtek Semiconductor Corp." as his employer with a location at 2870 Zanker Road, Suite 110, San Jose, CA 95134 and

United States District Court
Northern District of California

listing "Fremont, California" as his location); *id.* at 17 (Fuquan Wang listing "Realtek Semiconductor Corp." as his employer and listing "Fremont, California" as his location stating that he works "hybrid" for Realtek); *id.* at 21-22 (Hsiaopu (Jay) Lin listing "Realtek Semiconductor Corp." as his employer, stating that he has worked for Realtek as a "Senior Technical Manager" for the past 9 years in San Jose, California); *id.* at 29 (Tao Zhang listing "Realtek Semiconductor Corp." as his employer and listing "San Jose, California" as his location); *id.* at 34 (Weimin Zeng listing "Realtek Semiconductor Corp." as his employer for the past 16 years and listing his work location for that time as "San Fransico Bay Area" and his current location as "San Jose, California"); *id.* at 38 (Yi-Ching (Shafalo) Wu listing "Realtek Semiconductor Corp." as her employer and "San Diego, California" as her location). Notably, though UCT addressed this issue in its briefing to the Texas Court on its Motion for Alternative Service, Realtek's Motion fails to address—or even acknowledge—Realtek's U.S. subsidiaries or Realtek's employees that are located within 100 miles of the listed place of compliance on the Subpoena.

Accordingly, UCT has demonstrated that Realtek should be required to produce the requested discovery at the listed place of compliance on the subpoena. Again, it is not reasonable for Realtek to avail itself to the Northern District of California by regularly transacting business here through its subsidiaries and having numerous U.S.-based employees in this district but at the same time, avoid service of a subpoena or compliance with court orders and process.

Realtek's concerns about the "nature of the discovery sought" (Motion at 8-9) are over-stated. As an initial matter, production of source code in a highly technical patent infringement lawsuit is common practice. *See, e.g.*, *Thales Visionix, Inc. v. United States*, 149 Fed. Cl. 38 at 48 (Fed. Cl. Apr. 6, 2020) ("There are often protections put in place for the disclosure and viewing of such sensitive information. With such protections in place, there is no elevated standard when seeking the discovery of source code[.]"); *see also id.* (quoting Sonia K. Katyal, The Paradox of Source Code Secrecy, 104 Cornell L. Rev. 1183, 1275 (2019) ("Thus, because 'source code production is not an uncommon occurrence, litigators have ready-made tools at their disposal to address the merit of software-related disputes while ensuring that the source code remains protected and yet disclosed in a litigation dispute.'")). It is for this reason that parties negotiate and put in

place a protective order early in the case. Indeed, there is already a robust protective order in place in the Texas Case. *See* LGL Case, Dkt. No. 32. This includes express provisions directed to the protection of source code material. *See id.* at Section 10 (detailing treatment of Protected Material designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"). Demonstrating the sufficiency of the Texas PO is the fact that several third parties—including Texas Instruments, AMD, NVIDIA, Analogix, and MediaTek—have already produced source code in the Texas Case in response to subpoenas served on those third parties by UCT. Cooper Decl. ¶ 16. To the extent Realtek thinks the Protective Order in the Texas Case is not robust enough, Realtek can request a supplemental Protective Order with additional protections Realtek believes are necessary, as some of the third parties have already done. *See, e.g.*, *id.* at Dkt. Nos. 58, 61, 73, 76.

Realtek also argues that it would be "forced to place its source code into some form of physical storage and transport this sensitive information across the Pacific Ocean into the United States." Motion at 8-9. But that is not necessarily true. Source code can be accessed remotely through a secure computer or VPN. Indeed, UCT has already conducted source code review remotely for at least one other third party. *See* Cooper Decl. ¶ 16. Therefore, to the extent Realtek wants to avoid physical storage and/or transport of its source code, Realtek could provide remote access to UCT's reviewers via a secure computer located at its U.S. litigation counsel's office. In addition, Realtek could have requested that UCT review the source code at Realtek's headquarters in Taiwan.[4] Instead, Realtek refused to work cooperatively with UCT regarding this highly relevant discovery.

### D.    UCT's Discovery Requests Are Narrowly Tailored To The Needs Of The Underlying Case

UCT's discovery requests are narrowly tailored to the needs of the LGL Case. In the underlying LGL Case, UCT's infringement allegations are directed to certain USB, PCIe, and

---

[4] In its Motion, Realtek seems to suggest this as an alternative, though Realtek argues that UCT should only be permitted to first review technical documents in Taiwan and would thereafter have to establish that such is insufficient prior to being granted access to its source code. Motion at 10. However, if the Court were to permit this form of discovery, efficiency dictates that UCT's reviewers be permitted to review all of the relevant technical documents and source code during the review rather than having to make multiple trips to Taiwan.

United States District Court
Northern District of California

DisplayPort functionality in LGL's Products that are implemented by various third-party component parts. In response to UCT's discovery requests, LGL identified its relevant third-party suppliers—including Realtek—and provided the specific model numbers of the relevant components used in LGL's Products that are accused of infringement. In light of LGL's discovery responses, UCT subpoenaed the various third parties—including Realtek—to request the relevant source code and technical documents sufficient to show the operation of the accused features. In particular, UCT's Subpoena to Realtek requested:

> 1. Source code sufficient to show the operation of the Accused Features for each of the Realtek Chipsets, including the source code for hardware design and specification language descriptions, such as SDL, HDL, VHDL, iHDL, Verilog, System Verilog, or RTL, and the source code for higher software programming design languages, such as C and C++ programming languages.
>
> 2. Technical documents sufficient to show the operation of the Accused Features for each of the Realtek Chipsets that Realtek has supplied to Lenovo.

Ex. 9 (Subpoena to Realtek) at 7-8. On February 26, 2025, after meeting and conferring with Realtek regarding the scope of UCT's Subpoena, UCT provided Realtek with the specific list of Realtek component part numbers that were identified by LGL in its discovery responses. Ex. 2 (Email from Hasenour to Speegle 02-26-25). Further, on March 28, 2025, in response to a request by Realtek that UCT come up with a "lesser amount of discovery," UCT offered to agree to one set of representative source code for each of the Realtek component categories. Ex. 6 (Email from Ratycz to Speegle 03-27-25) at 2. Realtek rejected UCT's offer. *Id.* (Speegle Email to Ratycz 03-28-25).

Realtek argues that UCT has not shown any substantial need for this discovery from Realtek, stating that UCT's infringement allegations are based on standards documents which are publicly available. Motion at 9. While it is true that UCT's initial infringement contentions rely on technical information and functionality that is described in various standards documents, that does not mean that the requested technical and source code discovery is not needed. In fact, this is precisely the type of discovery that UCT needs in order to prove its infringement case because certain functionality identified in the various standards documents is implementation specific and UCT must show that the LGL Products in fact implement the standards in a way that meets all of the

United States District Court
Northern District of California

1    elements of the asserted claims. This requires UCT to review the source code for the various third-

2    party component parts that are responsible for implementing the functionality at issue in the claims.

3    It is for this reason that UCT has issued subpoenas to LGL's identified third-party component

4    suppliers requesting technical documents and source code sufficient to show the operation of the

5    relevant functionality provided by the third-party components. Notably, nearly all the third-party

6    component suppliers have engaged with UCT and assisted in providing UCT with the necessary

7    documentation – all but Realtek. Accordingly, the Court should compel Realtek to provide the

8    requested discovery and permit UCT to review the relevant source code information.

9    **V.    CONCLUSION**

10        For the foregoing reasons, the Court should compel Realtek to provide the requested

11   technical documents and source code within 10 days of this Court's Order.

13   DATED:  April 4, 2025                              Respectfully submitted,

14                                                       By:*/s/ Jennifer Estremera*

15   **BC LAW GROUP, P.C.**                             **REICHMAN JORGENSEN LEHMAN &**
     Brett E. Cooper (admitted *pro hac vice*)          **FELDBERG LLP**
16   bcooper@bc-lawgroup.com                            Jennifer Estremera (CA Bar No. 251076)
     Seth Hasenour (admitted *pro hac vice*)            jestremera@reichmanjorgensen.com
17   shasenour@bc-lawgroup.com                          100 Marine Parkway, Suite 300
     Jonathan R. Yim (admitted *pro hac vice*)          Redwood Shores, CA 94065
18   jyim@bc-lawgroup.com                               Tel:  (650) 623-1401
     Drew B. Hollander (admitted *pro hac vice*)
19   dhollander@bc-lawgroup.com
     Ashley M. Ratycz (admitted *pro hac vice*)
20   aratycz@bclgpc.com                                 *Attorneys for Respondent Universal Connectivity*
     200 Madison Avenue, 24th Floor                     *Technologies Inc.*
21   New York, NY 10016
     Tel: (212) 951-0100

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on April 4, 2025 with a copy of this document via the Court's ECF system and via email.

<u>*/s/ Jennifer Estremera*</u>
Jennifer Estremera