Robert Benson (SBN 155971)
BAKER BOTTS L.L.P.
101 California Street, Ste. 3200
San Francisco, CA 94111
Telephone: (415) 291-6285
Email: robert.benson@bakerbotts.com

Mark Speegle (SBN 293873)
BAKER BOTTS L.L.P.
401 South 1st Street, Suite 1300
Austin, Texas 78704
Telephone: (512) 322-2536
Email: mark.speegle@bakerbotts.com

Jeffrey Johnson (*pro hac vice*)
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1222
Email: jeffrey.johnson@bakerbotts.com

*Attorneys for Realtek Semiconductor Corporation*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORP., <br><br> Movant, <br><br> v. <br><br> UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., <br><br> Respondent. | Case No. 3:25-mc-80082-TLT <br><br> [Underlying Case No. 2:23-cv-00449 (E.D. Tex.) Universal Connectivity Tech. Inc. v. Lenovo Grp. Ltd.] <br><br> **NON-PARTY REALTEK SEMICONDUCTOR CORP.'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA** <br><br> Judge: The Honorable Trina L. Thompson <br> Date: June 10, 2025 <br> Time: 2:00 p.m. <br> Crtrm: 9, 19 Floor |

## TABLE OF CONTENTS

**Page**

I.   RULE 45 DOES NOT ALLOW ALTERNATIVE SERVICE .......................................... 1

II.  UCT HAS NOT SHOWN COMPLIANCE WITH RULE 45(C) ...................................... 4

    a.   Ubilinx and Cortina are irrelevant to Rule 45(c) for Realtek ................................ 4

    b.   Any alleged Realtek employees in California are insufficient for Rule 45(c) ........ 5

III. UCT IDENTIFIED NO FACTUAL DISPUTE REQUIRING DISCOVERY FROM REALTEK .................................................................................................................. 6

IV.  AS AN ALTERNATIVE, AN INSPECTION IN TAIWAN WOULD BE SUFFICIENT FOR UCT .................................................................................................................... 7

V.   NO WAIVER SHOULD APPLY ................................................................................ 8

VI.  CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alexander v. California Dep't of Corr.& Rehab.*,
  No. 2:08-CV-2773, 2011 WL 1047647 (E.D. Cal. Mar. 18, 2011)...........................................2

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014) ............................................................................................7

*Andra Grp., LP v. JDA Software Grp., Inc.*,
  312 F.R.D. 444 (N.D. Tex. 2015) .........................................................................................10

*Baker v. Ensign*,
  No. 11–CV–2060, 2014 WL 3058323 (S.D. Cal. July 3, 2014)..............................................8

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  No. ED CV 14-1926-JAK (SP), 2015 WL 12778353 (C.D. Cal. Oct. 22, 2015).....................5

*Chima v. U.S. Department of Defense*,
  23 Fed. Appx. 721 (9th Cir. Dec.14, 2001) .............................................................................2

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................................10

*Europlay Cap. Advisors, LLC v. Does*,
  323 F.R.D. 628 (C.D. Cal. 2018) ............................................................................................5

*F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*,
  636 F.2d 1300 (D.C. Cir. 1980) ..............................................................................................2

*Free Stream Media Corp. v. Alphonso Inc.*,
  No. 17-CV-02107-RS (KAW), 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017) .........................8

*Fujikura Ltd. v. Finisar Corp.*,
  No. 15-mc-80110-HRL-JSC, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015*)* .............................2

*GreenLake Real Est. Fund LLC v. Waid*,
  No. 2:24-mc-00040-WLH (SKX), 2024 WL 3009015 (C.D. Cal. Apr. 11, 2024)................ 4-5

*HI.Q, Inc. v. ZeetoGroup, LLC*,
  No. MC 22-cv-1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov. 29, 2022)....................10

*In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*,
  No. 14-MC-80191-RS (JSC), 2014 WL 3784112 (N.D. Cal. July 31, 2014).................8, 9, 10

*Khan v. Rogers*,
  No. 17-CV-05548-RS (LB), 2018 WL 5849010 (N.D. Cal. Nov. 6, 2018) ..............................2

*Kissinger v. Reps. Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ..................................................................................................................3

*Lemberg Law LLC v. Hussin*,
  No. 3:16-mc-80066-JCS, 2016 WL 3231300 (N.D. Cal. June 13, 2016)..................................8

*Netlist, Inc. v. Montage Tech., Inc.*,
  No. 22-mc-80337-VKD, 2023 WL 2940043 (N.D. Cal. Feb. 24, 2023)..............................3, 4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  233 F.R.D. 143 (D. Del. 2005) .................................................................................................5

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ..................................................................................................9

*SiteLock, LLC v. GoDaddy.com, LLC*,
  338 F.R.D. 146 (D. Or. 2021) ...................................................................................................2

*Slaten v. Experian Info. Sols. Inc.*,
  No. CV 21-9045-MWF(Ex), 2023 WL 6889026 (C.D. Cal. May 3, 2023) ......................... 2-3

*Viasat, Inc. v. Space Sys./Loral, LLC*,
  No. 13-CV-2074-H (WVG), 2014 WL 12577593 (S.D. Cal. June 30, 2014) .....................1, 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45 ............................................................................................................... *passim*

Fed. R. Civ. P. 4 .........................................................................................................1, 2, 3, 4

In its Opposition (ECF No. 8, "Opp'n"), Respondent Universal Connectivity Technologies Inc. ("UCT") glosses over the fundamental dispute underlying Realtek's Motion to Quash: Rule 45 does not allow UCT to compel discovery from foreign third parties.  Instead of engaging with the express limits of Rule 45, UCT dismisses the issue as an effort by Realtek "to evade the judicial system." Opp'n at 1.  But the U.S. judicial system cannot issue third party subpoenas under Rule 45 to compel document production and depositions of any third party anywhere in the world—Rule 45 defines what discovery UCT can demand, and it does not include non-parties outside the U.S.  What UCT seeks from Realtek goes well beyond the limits of Rule 45.

## I. RULE 45 DOES NOT ALLOW ALTERNATIVE SERVICE

UCT's arguments about the sufficiency of its alternative service are off point because UCT does not engage with the distinction between Rule 4 and Rule 45.  Instead, UCT repeatedly tries to blur this distinction.  For example, the Federal Rules of Civil Procedure do not provide that a foreign corporation may be served ***a subpoena*** "in any manner prescribed by Rule 4(f) for serving an individual." *Contra* Opp'n at 7.  This provision comes from Rule 4(h), and it applies to service of summons—not subpoenas.  This distinction is made expressly in the Advisory Committee Notes to the 1993 Amendments for Rule 4: "Service of a subpoena is governed by Rule 45 […] . The revised rule [Rule 4] is entitled 'Summons' and applies *only* to that form of legal process." Fed. R. Civ. P. 4, Advisory Committee Note—1993 Amendments (emphasis added).  Because Rule 45 controls—not Rule 4—it does not matter whether UCT's attempted alternative service of ***a third-party subpoena*** complies with Rule 4.  *Contra* Opp'n at 9–10.

The distinction between Rule 4 and Rule 45 is more than a technicality—Rule 4 and Rule 45 are directed to fundamentally different procedures that warrant different types of service.  *See Viasat, Inc. v. Space Sys./Loral, LLC*, No. 13-CV-2074-H (WVG), 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014) ("Significant differences exist between service of process and service of a subpoena duces tecum on a non-party.").  A summons under Rule 4 primarily provides a party with notice of a new lawsuit.  A subpoena under Rule 45, in contrast, compels action by a non-party with the threat of sanctions.  For this reason, courts have recognized that international service of compulsory process

1  (such as a subpoena)—apart from procedures specified by international treaties and letters rogatory
2  between judicial systems—raises unique concerns of sovereignty and international law:

> When compulsory process is served, however, the act of service itself constitutes an exercise of one nation's sovereignty within the territory of another sovereign. Such an exercise constitutes *a violation of international law*. […] Given the compulsory nature of a subpoena, however, subpoena service by direct mail upon a foreign citizen on foreign soil, without warning to the officials of the local state and without initial request for or prior resort to established channels of international judicial assistance, is perhaps maximally intrusive.

*F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1313 (D.C. Cir. 1980) (emphasis added).

Rather than engage with the differences between Rule 4 and Rule 45, UCT relies on a string citation to district court decisions following the minority view that Rule 4 supplements Rule 45. Opp'n at 10–11. UCT presents this citation as though it were an undisputed point of law, even going so far as to question the extent of contrary caselaw because Realtek (supposedly) "cites only to one treatise in support." *Id*. at 11 n.4. First, it is not true that Realtek cited "only to one treatise" for this point; Realtek's Motion also cited to multiple cases in this circuit rejecting the minority view that UCT relies on. ECF No. 1 ("Mot.") at 6; *Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL-JSC, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015*); SiteLock, LLC v. GoDaddy.com, LLC*, 338 F.R.D. 146, 154 (D. Or. 2021); *Viasat*, 2014 WL 12577593 at *5. Additional cases within the Ninth Circuit easily confirm that most courts reject the use of alternative service under Rule 45. *See Alexander v. California Dep't of Corr.& Rehab.*, No. 2:08-CV-2773, 2011 WL 1047647, at *6 (E.D. Cal. Mar. 18, 2011) ("Although it appears that the Ninth Circuit has only rarely had occasion to construe the service requirement of Rule 45, it has applied the majority rule, most notably in the unpublished decision, *Chima v. U.S. Department of Defense*, 23 Fed. Appx. 721, 2001 WL 1480640, at * 2 (9th Cir. Dec.14, 2001)."); *Khan v. Rogers*, No. 17-CV-05548-RS (LB), 2018 WL 5849010, at *4 (N.D. Cal. Nov. 6, 2018) ("The majority rule is that Federal Rule of Civil Procedure 45 requires personal service, as opposed to service by mail." (citing *Chima*, 23 F. App'x at 724)); *Slaten v. Experian Info. Sols. Inc.*, No. CV 21-9045-MWF(Ex), 2023 WL 6889026, at *1 (C.D.

1  Cal. May 3, 2023) ("The authors of the Federal Rules of Civil Procedure, and the United States
2  Supreme Court Justices who approve amendments to the Federal Rules, obviously know how
3  to create a rule which unambiguously authorizes such service[.][…] They have not done so in
4  Rule 45(b).")).

5        Second, the "one treatise" that UCT wrongly dismisses is Wright & Miller, which is a
6  widely accepted source on federal civil procedure, repeatedly cited by district courts, circuit
7  courts, and even Supreme Court Justices. *See e.g.*, *Kissinger v. Reps. Comm. for Freedom of*
8  *the Press*, 445 U.S. 136, 165, n.6 (1980) (J. Stevens, concurring in part and dissenting in part,
9  citing Wright & Miller's discussion of subpoenas). When it comes to surveying how district
10 courts have interpreted the Federal Rules of Civil Procedure, it is difficult to imagine a more
11 authoritative source than Wright & Miller.

12       Nonetheless, even if the Court adopts the minority view and considers service of a
13 third-party subpoena under Rule 4, that would "not dispose of the question of personal
14 jurisdiction or any of the other requirements of Rule 45." *Netlist, Inc. v. Montage Tech., Inc.*,
15 No. 22-mc-80337-VKD, 2023 WL 2940043, at *2–3 (N.D. Cal. Feb. 24, 2023) (considering
16 Rule 4 and denying motion to compel enforcement of Rule 45 subpoena against foreign
17 company). Service under Rule 4 does not automatically provide personal jurisdiction—Rule
18 4(k), "Territorial Limits of Effective Service," provides only that "serving a **summons** …
19 establishes personal jurisdiction over a defendant," not serving a subpoena. Fed. R. Civ. P.
20 4(k) (emphasis added). Rule 4 itself is titled, "Summons." Because "notice to a non-party
21 corporation is insufficient for purposes of compelling compliance with a subpoena," UCT
22 "must establish that [Realtek] has sufficient minimum contacts with this district to satisfy
23 federal due process requirements in order for service to be effective under Rule 45." *Netlist*,
24 2023 WL 2940043 at *3 *Id.* More specifically, the Court in *Netlist* held that under "principles
25 applicable to general and specific jurisdiction over parties apply equally to jurisdiction over
26 non-parties for purposes of discovery." *Id.* at *4, n. 7. Under principles of specific jurisdiction,
27 the specific discovery sought by the subpoena must arise out of or relate to a third party's
28 contacts with the forum (here, California). *Id.* at *4-5. UCT ignores these requirements and

1  makes no arguments establishing such jurisdiction over Realtek, much less establishing that
2  the discovery sought arises out of the contacts giving rise to special jurisdiction. Thus, UCT's
3  alternative service arguments would fail *even considering* Rule 4.

4  Lastly, UCT's arguments about its attempt at letters rogatory and other efforts to serve
5  Realtek miss the point. Opp'n at 11–12. Because UCT asserted in January 2025 that the
6  Eastern District of Texas schedule could not accommodate the time required for letters
7  rogatory, it is unclear why UCT requested letters rogatory in December 2024. *Compare*
8  *Universal Connectivity Tech.*, Dec. 3, 2024 Mot. at 3, ECF No. 63, *with Universal Connectivity*
9  *Tech.*, Jan. 22, 2025 Mot. at 1, ECF No. 82 ("[T]he letters rogatory process may take four to
10 seven months to complete"). If UCT never intended to give its letters rogatory the time needed
11 to be legally served, then it appears that UCT's motion for letters rogatory was pretextual.
12 Along with UCT's other non-compliant attempts to serve Realtek, UCT's letters rogatory
13 appears to be an artificial strategy that UCT pursued purely to support a later motion for
14 alternative service. Such tactics should not be rewarded.

15 **II.   UCT HAS NOT SHOWN COMPLIANCE WITH RULE 45(C)**

16 None of UCT's arguments about Rule 45(c) can overcome the simple reality that Realtek is
17 headquartered in Taiwan, thousands of miles from the place of compliance in UCT's subpoena.
18 Without citing any caselaw, UCT argues that Realtek's corporate affiliates in California and certain
19 alleged Realtek employees in northern California could satisfy the geographic limit in Rule 45(c).
20 Opp'n at 12–13. But contrary to UCT's premise, courts have rejected similar arguments stretching
21 the bounds of Rule 45(c). And regardless, UCT's arguments are factually incorrect: as stated in the
22 declaration submitted by Realtek with its motion, Realtek maintains corporate distinctions between its
23 U.S. affiliates, and Realtek does not have any employees in the United States. ECF No. 1-2
24 (Declaration of Huang, Yee-Wei), ¶¶ 6–7.

25   **a.   Ubilinx and Cortina are irrelevant to Rule 45(c) for Realtek**

26 Having a corporate subsidiary within 100 miles of the place of compliance does not satisfy
27 Rule 45(c). *See Netlist*, 2023 WL 2940043 at *5–6 (rejecting argument that Rule 45(c) was satisfied
28 by the place of compliance being within 100 miles of a corporate subsidiary); *GreenLake Real Est.*

*Fund LLC v. Waid*, No. 2:24-mc-00040-WLH (SKX), 2024 WL 3009015, at *2 (C.D. Cal. Apr. 11, 2024) ("Nor has [the party issuing the subpoena] established that [the target company] itself (rather than some affiliated entity) has a corporate presence in Nevada sufficient to make the company a resident of that state."). More generally, courts do not pierce corporate formalities between related companies simply because it is difficult to compel foreign discovery: "While the court is sympathetic to the difficulties involved with obtaining discovery from foreign entities, that these entities retained local counsel and have close business relationships with a party to this action, is not enough to 'justify disregarding the discrete, corporate identity.'" *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. ED CV 14-1926-JAK (SP), 2015 WL 12778353, at *2 (C.D. Cal. Oct. 22, 2015) (rejecting argument that service on a subsidiary was effective) (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005)). In order to compel documents from Realtek, UCT must show that its subpoena is effective as to Realtek itself—not Realtek's affiliates.

UCT also does not allege any factual basis for piercing the corporate veil between Realtek and its affiliates. UCT only describes Ubilinx and Cortina as Realtek's "subsidiaries located in the United States." Opp'n at 12. There is no suggestion (or evidence) that Ubilinx or Cortina should be treated as alter egos or agents of Realtek, or that Realtek failed to maintain a proper corporate separation between these entities. The only evidence to this point is the declaration submitted by Realtek's Vice President, which confirmed that Realtek's affiliates "operate as distinct businesses, observing proper corporate formalities that distinguish these affiliates from Realtek." ECF No. 1-2 (Declaration of Huang, Yee-Wei), ¶ 7. Because UCT has not presented any basis for disregarding this testimony, the corporate veil should not be pierced, which means Ubilinx and Cortina are irrelevant to Rule 45(c).

**b. Any alleged Realtek employees in California are insufficient for Rule 45(c)**

Simply having employees in a jurisdiction is also insufficient to satisfy Rule 45(c). *Contra* Opp'n at 12–13. For example, in *Europlay Cap. Advisors, LLC v. Does*, the Central District of California court rejected an argument that Google could be subpoenaed in that district based on Google's office in Venice, California. 323 F.R.D. 628, 629 (C.D. Cal. 2018). This argument failed because "despite Google having an office in Venice, the proper district to hear a motion to compel is where Google is ***headquartered***." *Id*. (emphasis added). If Google's formal office in Venice was

1  insufficient to comply with the 100-mile rule in *Europlay*, then no collection of disparate Realtek
2  employees—with no connection to the requested discovery—could satisfy the 100-mile rule in this
3  case.

4        In addition to this legal insufficiency, the LinkedIn profiles identified by UCT do not show
5  that Realtek has employees within 100 miles of the place of compliance. Realtek stands by the
6  statement of its declarant that Realtek does not have employees in the United States, notwithstanding
7  these LinkedIn profiles. ECF No. 1-2 (Declaration of Huang, Yee-Wei), ¶ 6. While Realtek does not
8  have direct knowledge of these individual LinkedIn profiles, it is likely that these are employees of
9  affiliated companies that are incorrectly identifying their employer as Realtek. Indeed, many of the
10 LinkedIn profiles that UCT identified have already been updated to clarify that the individuals are not
11 actually employed by Realtek—they are employed by Ubilinx. Ex. G to Declaration of Mark Speegle.
12 In addition, hearsay statements in a LinkedIn profile do not establish an individual's residency or
13 employment—information listed on LinkedIn may be out of date, aspirational for new opportunities,
14 or simply false.

15       The statement UCT cites from Realtek's 2023 annual report about "sales or R&D teams"
16 similarly fails. Opp'n at 12. This statement does not establish that Realtek Semiconductor
17 Corporation itself (as opposed to its affiliates) directly employs individuals in the United States. More
18 importantly, the annual report statement says nothing about hypothetical employees in northern
19 California, which is the relevant inquiry for Rule 45(c).

20 **III.    UCT IDENTIFIED NO FACTUAL DISPUTE REQUIRING DISCOVERY FROM REALTEK**

21       UCT did not identify any specific dispute between Lenovo and UCT that necessitates discovery
22 from Realtek. UCT acknowledged that it brought its case against Lenovo and served infringement
23 contentions using "technical information and functionality that is described in various standards
24 documents." Opp'n at 15. As such, an unspecified need "to prove its infringement case" is not a
25 sufficient basis for UCT to demand source code for over 100 Realtek products. If UCT or its
26 infringement expert are unable to determine whether a given claim limitation is present in the accused
27 products without discovery from Realtek, then UCT should have identified the missing limitation. To
28 that end, UCT should already know what claim limitations require source code: the Eastern District of

Texas has a separate practice for claim limitation that requires source code for infringement contentions. *Universal Connectivity Tech.*, Jun. 12, 2024, Discovery Order, ¶ 3(a)(i), ECF No. 26. UCT's failure to identify any specific claim limitations therefore suggests that UCT does not have any particularized need for discovery from Realtek.

UCT also did not address the discovery that it already received from Lenovo and other parties. UCT simply asserts—without evidence—that it needs to "review the source code for the various third-party component parts that are responsible for implementing the functionality at issue in the claims." Opp'n at 16. But even if Lenovo does not have source code for the accused products, Lenovo must have produced some technical documents about the accused products.[1] To justify discovery from Realtek, who is not a party to the case, UCT, at a minimum, must identify what is missing from the technical information produced by Lenovo. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."). In addition, the fact that "nearly all the third-party component suppliers have engaged with UCT and assisted in providing UCT with the necessary documentation," suggests that UCT may have all the discovery it needs already, without further discovery from Realtek. *See* Opp'n at 16. UCT cannot ignore these other sources of discovery and justify discovery from Realtek based on its *ipse dixit*.

IV. **AS AN ALTERNATIVE, AN INSPECTION IN TAIWAN WOULD BE SUFFICIENT FOR UCT**

Because UCT's subpoena does not comply with foundational elements of Rule 45, the subpoena should be quashed as a whole. However, as stated in Realtek's Motion to Quash, if the Court disagrees that UCT's subpoena must be quashed in full, then Realtek asks ***in the alternative*** that the Court narrow the required discovery to an inspection of technical documents at Realtek's headquarters. Mot. at 10. UCT notably makes no argument that Realtek's proposed inspection would be unsatisfactory as a replacement to production in the United States. Instead, UCT only argues that it should be allowed to inspect both source code and technical documents from Realtek in the same

---

[1] At Lenovo's request, Realtek granted Lenovo permission to produce to UCT certain Realtek product datasheets that were in Lenovo's possession, subject to the protective order in the Eastern District of Texas case.

REALTEK'S REPLY ISO MOTION TO QUASH SUBPOENA    7    CASE NO. 3:25-mc-80082-TLT

1  trip. Opp'n at 14 n.4. Because UCT does not dispute that a less burdensome form discovery would
2  be sufficient, the Court should not order Realtek to produce documents into the United States,
3  especially not on the expedited basis UCT seeks.

4  UCT also has not shown that it needs access to Realtek's source code. While UCT suggests
5  that "efficiency dictates" that UCT be granted access to both source code and technical documents in
6  the same inspection, the proper focus should be on reducing the burden to Realtek, the non-party.
7  "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection
8  from the courts." *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-CV-02107-RS (KAW), 2017 WL
9  6209309, at *3 (N.D. Cal. Dec. 8, 2017) (quoting *Lemberg Law LLC v. Hussin,* No. 3:16-mc-80066-
10 JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016)). Consistent with this policy, ***even if*** UCT's
11 Rule 45 subpoena was proper, which it is not, discovery from Realtek should be narrowly tailored to
12 meet UCT's actual needs. For example, if the subpoena is not fully quashed, UCT should: first identify
13 specific claim limitations that are missing from the discovery it received from Lenovo and other
14 parties; second, inspect Realtek's non-source code materials corresponding to those specific missing
15 limitations; and, third, if genuine gaps still remain, then coordinate a narrow inspection of Realtek's
16 highly sensitive and confidential source code, corresponding to those remaining gaps.

17 **V.   NO WAIVER SHOULD APPLY**

18 UCT's arguments for waiver should be rejected because UCT has not cited any cases finding
19 that a waiver should apply in circumstances like these—where Realtek moved to quash the subpoena
20 *prior to* UCT moving to compel. Because Realtek brought this motion before any attempt by UCT to
21 compel production, UCT cannot argue that Realtek has delayed the resolution of UCT's subpoena.
22 Realtek's prompt efforts to bring this dispute before this Court confirms that at least two of the
23 recognized exceptions to waiver apply in this case: "the subpoenaed witness is a non-party acting in
24 good faith," and "counsel for the witness and counsel for the subpoenaing party were in contact
25 concerning the witness' compliance prior to the time the witness challenged the legal basis for the
26 subpoena." *In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich,*
27 *Beeman & Scheley*, No. 14-MC-80191-RS (JSC), 2014 WL 3784112, at *3 (N.D. Cal. July 31, 2014)
28 (quoting *Baker v. Ensign,* No. 11–CV–2060, 2014 WL 3058323, at *6 (S.D. Cal. July 3, 2014)).

REALTEK'S REPLY ISO MOTION TO QUASH          8          CASE NO. 3:25-mc-80082-TLT
SUBPOENA

The only case that UCT cites—a 9th Circuit case from over thirty years ago—involved readily distinguishable facts. Opp'n at 6 (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)). *Richmark* involved the appeal of sanctions and contempt orders, following discovery that the district court entered after a default judgment again a party. 959 F.2d at 1471. Not only did the party resisting discovery in *Richmark* fail to raise relevant objections in response to the discovery requests, but it also failed to raise those issues in opposition to a motion to compel. *Id.*, 1473. *Richmark* is thus nothing like the present case, which involves an affirmative motion to quash, third-party discovery, and objections served only days late.

UCT's thin arguments—unsupported by any cases—about the exceptions to finding waiver are unavailing. For the first exception, the parties have a disagreement about the overbreadth of the subpoena, both for the first waiver exception and the merits of the subpoena. *See* Opp'n at 7. If the Court agrees with Realtek that the subpoena is overbroad, then there is no need to consider the second and third alternative exceptions. However, any one of the three exceptions is sufficient to avoid a finding of waiver, and UCT's arguments regarding the second and third exceptions also fail.

For the second exception, UCT argues that Realtek is not "a non-party acting in good faith" because of (1) the inadvertent delay in receiving Realtek's objections, and (2) Realtek's filing of the Motion to Quash instead of pursuing joint letter briefing. Opp'n at 6-7; *see also Clapp*, 2014 WL 3784112 at *3. But it is self-evident that the inadvertent delay in Realtek's objections cannot nullify the second exception—these exceptions only exist as reactions to untimely objections. Nor does Realtek's election of formal motion briefing suggest bad faith. Realtek declined UCT's suggestion to handle this dispute through letter briefing because the application of Rule 45 to a third party in Taiwan, apart from letters rogatory, is an important legal issue to Realtek. Formal motion briefing gives both parties the best opportunity to fairly present positions on this issue. Seeking a ruling from this Court on a full record cannot be considered evidence of bad faith.

For the third exception, UCT does not dispute that "counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." Opp'n at 7; *Clapp*, 2014 WL 3784112 at *3. Instead, UCT's only argument against this exception is that Realtek's objections were not timely. Opp'n at 7.

1    This is another circular argument by UCT: if untimely objection nullified this exception, it would
2    never apply.  Other courts have repeatedly recognized that waiver is not appropriate when the parties
3    are already in communication.  *Clapp*, 2014 WL 3784112 at *3; *HI.Q, Inc. v. ZeetoGroup*, *LLC*, No.
4    MC 22-cv-1440-LL-MDD, 2022 WL 17345784, at *12 (S.D. Cal. Nov. 29, 2022) ("The Court will
5    excuse Zeeto's failure to timely serve objections to the subpoena *duces tecum* because counsel for
6    Health IQ and Zeeto were in contact before and after Zeeto served those objections."); *see also Andra*
7    *Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 451 (N.D. Tex. 2015) (declining to find a waiver
8    where "the record is also clear that counsel for [the subpoenaed party] and for Defendant were in
9    contact as to [the subpoenaed party's] compliance prior to [the subpoenaed party's] moving to
10   quash."); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996) (declining to
11   find a waiver where "[the subpoenaed party's] and plaintiffs' respective counsels were in frequent
12   contact concerning [the subpoenaed party's] compliance with the Brunswick Subpoena prior to the
13   time [the subpoenaed party] filed the instant motion.").  UCT has not presented any sound basis for
14   contravening this precedent.

15          Moreover, UCT has not explained how the inadvertent eight-day delay in Realtek's objections
16   caused UCT any prejudice.  As soon as UCT let Realtek know that it had not received the objections,
17   Realtek rectified the situation by immediately sending the objections, and Realtek agreed to meet and
18   confer the next day.  *See* Opp'n at 4.  Realtek's position on the subpoena also should not have been a
19   surprise to UCT.  As reflected in the parties' correspondence, Realtek questioned the basis for UCT's
20   subpoena as early as February 26.  ECF No. 1-5 (Ex. D) at 2 ("And please do send any authority UCT
21   has for enforcing a Rule 45 subpoena on a foreign corporation.").  Because UCT has suffered no harm
22   as a result of the short inadvertent delay in Realtek's objections, a finding of waiver would be
23   inequitable.

24   **VI.    CONCLUSION**

25          UCT cannot demand foreign discovery by ignoring the plain language of Rule 45, which
26   restricts service of a subpoena and restricts where a subpoena may require compliance.  Rule 45
27   subpoenas were never intended to give U.S. litigants international discovery powers, infringe the
28   sovereignty of foreign nations, or extend the territorial jurisdiction of the U.S. judicial system

worldwide. As such, UCT should be required to use the traditional letters rogatory approach for foreign discovery, a process which UCT already started back in December, 2024. For all the foregoing reasons and as stated in its Motion and Memorandum of Points and Authorities, Realtek respectfully requests that this Court quash UCT's subpoena to Realtek and deny UCT's Cross Motion to Compel.

Dated: April 11, 2025                               Respectfully submitted,

*/s/ Mark Speegle*
Robert Benson (SBN 155971)
BAKER BOTTS L.L.P.
101 California Street, Ste. 3200
San Francisco, CA 94111
Telephone: (415) 291-6285
Email: robert.benson@bakerbotts.com

Mark Speegle (SBN 293873)
BAKER BOTTS L.L.P.
401 South 1st Street, Suite 1300
Austin, Texas 78704
Telephone: (512) 322-2536
Email: mark.speegle@bakerbotts.com

Jeffrey Johnson (*pro hac vice*)
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1222
Email: jeffrey.johnson@bakerbotts.com

*Attorneys for Realtek Semiconductor Corporation*